UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| GOT GOLD LLC, | |
| Plaintiff, | |
| v. | Case No. 12-2278 |
| SANDRA TEMPLE, BRADLEY ROSE, and THE GOLD PEOPLE, | |
| Defendants. | |

### REPORT AND RECOMMENDATION

In October 2012, Plaintiff Got Gold? LLC filed a three-count complaint against Defendants Sandra Temple ("Temple"), Bradley A. Rose ("Rose"), and The Gold People, alleging breach of fiduciary duty, tortious interference with business expectancy, and conversion. Federal jurisdiction exists pursuant to 28 U.S.C. § 1332, as there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

In December 2012, Defendants filed a Motion to Dismiss Counts II and III of Plaintiff's Complaint Pursuant to Rule 12(b)(6) (#11). Shortly thereafter, Plaintiff filed a Response to Defendants' Motion to Dismiss (#14). After reviewing the parties' pleadings and memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Defendants' Motion to Dismiss (**#11**) be **DENIED.**

### I. Factual Background

The Court takes the following background from Plaintiff's Complaint (#1), accepting all well-pleaded factual allegations as true. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

In 2008, Paula Wyatt founded Plaintiff Got Gold? LLC in Florida and began doing business purchasing and reselling gold and other precious metals. Plaintiff

organizes "gold parties," which are private parties held in an individual's ("the hostess") home or other premises. The hostess invites others ("invitees") to attend the parties for the purpose of selling gold coins, gold jewelry, other gold items, and precious metals in exchange for cash. The hostess is paid an incentive and receives a referral fee if an invitee subsequently hosts a party. Referrals are important to Plaintiff's business as they enable Plaintiff to gain new clientele.

Defendants Temple and Rose reside in Tennessee. In July 2009, Wyatt met Temple at a gold party in Knoxville, Tennessee. Temple was an invitee of the party and later hosted her own. The two became friends and shortly thereafter Temple began working for Plaintiff. At that time, Temple's son, Rose, also began working for Plaintiff as a contractor on a part-time basis and began working for Plaintiff full-time at some point in 2010. Temple and Rose scheduled, organized, and attended gold parties on behalf of Plaintiff, prepared accountings in connection with transactions they undertook on behalf of Plaintiff, and prepared and maintained custody of Plaintiff's business records relative to hostesses and invitees, who were prospective customers. Temple and Rose had access to Plaintiff's bank account, maintained custody of gold and other metals purchased for Plaintiff, and maintained custody of Plaintiff's funds used to purchase gold and other metals.

In early 2012, both Temple and Rose held gold parties and marketed Plaintiff's business in central Illinois. They gained referrals from the parties. During the period of March 1, 2012 to May 9, 2012, Defendants collectively attended at least thirty-eight gold parties in central Illinois. Twenty-eight of the parties occurred within the Central District of Illinois. Temple and Rose also made individual gold purchases from invitees outside of the gold parties during that time.

On May 3, 2012, Temple and Rose registered a general partnership named "The Gold People" in Tennessee. Beginning in March 2012 and continuing through May 2012, Rose did not regularly report invitee contact information to Plaintiff. He withheld the information in order to use it to generate referrals on behalf of The Gold People.

2

Temple and Rose reported Plaintiff's scheduled parties as "cancelled," but Defendants were actually rescheduling the parties on behalf of their new business.

Temple began communicating with prospective hostesses through her own personal email with the intention of maintaining contact with them after she resigned from her position with Plaintiff. Rose used Plaintiff's funds for his own personal benefit. He purchased gold and other precious metals with the funds, but kept or sold the items and never reported his actions to Plaintiff. After their relationships with Plaintiff terminated, Temple and Rose refused to turn over business records containing hostess and invitee contact information, and Temple claimed that the records had inadvertently been destroyed. Temple and Rose affirmatively misrepresented their activities in conversations with Wyatt to conceal their wrongdoings.

## II.  Legal Standard

A motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), serves to test the sufficiency of the complaint, not to decide the merits of the case. *See AnchorBank*, 649 F.3d at 614; *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a motion to dismiss, the complaint need only contain sufficient factual allegations to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this standard, the allegations in the complaint must, one, be detailed enough to "give the defendant 'fair notice of what the claim is and the grounds upon which it rests,'" and, two, "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 554, 555) (alteration omitted).

In considering a motion to dismiss for failure to state a claim, the Court is limited to the allegations in the pleadings. *See Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012). The Court must evaluate the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations and

3

drawing all reasonable inferences in the plaintiff's favor. *AnchorBank*, 649 F.3d at 614. Importantly, however, the Court does not accept as true mere legal conclusions, unsupported by factual allegations, or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678.

### III. Analysis

Defendants move to dismiss Count II, tortious interference with business expectancy, and Count III, conversion, for failure to state claims upon which relief may be granted.

**A. Conflict of Law**

As a preliminary matter, because Plaintiff brings state law claims of tortious interference with business expectancy and conversion, the Court must address which state's law to apply. Plaintiff presumes that Illinois substantive law applies. Defendants argue that Tennessee law applies, but acknowledge that the elements for both claims are so similar in both Illinois and Tennessee that the Court need not decide the question at this time.

When sitting in diversity, federal courts apply the conflict of law rules of the state in which they sit. *Day & Zimmerman, Inc. v. Challoner*, 423 U.S. 3, 4 (1975). Illinois follows the standard set forth in the Second Restatement of Conflict of Laws, *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007), which directs courts to apply the laws of the state with the most significant relationship to the occurrence and the parties, *id.* at 901. However, a conflict of law determination need only be made if the difference in law will affect the outcome. *Id.* at 898. As explained below, the elements of a claim for tortious interference with business expectancy and conversion are substantially similar in Illinois and Tennessee and will yield the same outcome. Therefore, the Court need not decide the conflict of law matter in order to resolve this motion.

**B. Count II**

In Count II, Plaintiff alleges that Defendants purposefully interfered with Plaintiff's prospective business relationships. In order to establish a claim for tortious interference with business expectancy, a plaintiff must prove: (1) an existing business relationship or a reasonable expectation of entering into a business relationship with an identifiable class of third persons, (2) the defendant's knowledge of the relationship or expectation, (3) purposeful or intentional interference by the defendant, through improper motive or means, that prevents the plaintiff's legitimate expectancy from ripening or causes the termination of the existing business relationship, and (4) damages to the plaintiff resulting from the tortious interference. *Trau-Med of Am. Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002); *Atanus v. Am. Airlines*, 932 N.E.2d 1044, 1048 (Ill. App. Ct. 2010).

**1. Identifiable Third Persons**

Defendants argue that the Court should dismiss this Count because Plaintiff fails to identify a class of third persons with whom it sought to engage in business. *Trau-Med*, 71 S.W.3d at 701. Defendants are correct that "[p]laintiff must plead facts to show interference of a business relationship with specific third parties or an identifiable prospective class of third persons." *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 546 N.E.2d 33, 37 (1989); *see also Trau-Med*, 71 S.W.3d at 701. Importantly, however, "[t]his does not mean . . . that plaintiff must allege the identity of the third party or parties by name." *Downers Grove*, 546 N.E.2d at 37. Here, Plaintiff alleges with sufficient specificity an identifiable class of third persons: the invitees and subsequent referrals that Plaintiff would have gained from gold parties hosted by Rose and Temple, had they not diverted these referrals to their own business, The Gold People. It is not necessary that Plaintiff, particularly at the pleading stage, identify these hostesses and invitees by name.

**2. Requisite Level of Intent**

Defendants also argue that Plaintiff's allegations do not demonstrate that Defendants purposefully or intentionally interfered with Plaintiff's business expectancy.

5

"[T]he element of 'purposeful' or 'intentional' interference refers to some impropriety committed by the defendant in interfering with the plaintiff's expectancy." *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 893 N.E.2d 981, 994 (Ill. App. Ct. 2008) (quoting *Romanek v. Connelly*, 753 N.E.2d 1062, 1073 (Ill. App. Ct. 2001)); *accord Trau-Med*, 71 S.W.3d at 701 (requiring showing of "improper motive or improper means"). Specifically, "[p]laintiffs must prove that defendants acted 'intentionally with the aim of injuring' plaintiffs' expectancy." *Chicago's Pizza, Inc.*, 893 N.E.2d at 994 (quoting *Romanek*, 753 N.E.2d at 1073); *accord Trau-Med*, 71 S.W.3d at 701 n.5 ("[W]ith regard to improper motive, we require that the plaintiff demonstrate that the defendant's predominant purpose was to injure the plaintiff.").

Plaintiff alleges that, while working for Plaintiff, Temple and Rose canceled gold parties scheduled on Plaintiff's behalf and rescheduled them to be held by their new business, The Gold People; Rose failed to report invitee contact information to Plaintiff in order to use it to generate referrals on behalf of The Gold People; Temple began communicating with prospective hostesses through her personal email in order to maintain contact with them when she resigned from Plaintiff; Temple and Rose actively concealed this misconduct from Plaintiff; and Temple and Rose, after resigning, refused to give Plaintiff records containing invitee contact information.

These allegations, which show a pattern of subverting Plaintiff's efforts to maintain and grow her business, support the reasonable inference that Defendants acted with the intent to injure Plaintiff's business expectancy. Plaintiff is not required to allege intent with any special particularity; Rule 9(b) plainly states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).[1]

---

[1] Additionally, Defendants introduce the concept of "competitor's privilege," stating that businesses can divert business from their competitors, as long as their intentions are at least partly based in furtherance of their own business purposes and not exclusively motivated by spite or ill-will. *General Motors Corp. v. State Motor Vehicle Review Bd.*, 862 N.E.2d 209, 220 (Ill. 2007). However, "competitor's privilege" is an affirmative defense to the tort of interference with business expectancy that Defendant may raise and prove. *Id.* Plaintiff need not disprove it to survive a motion to dismiss.

6

Given these facts, Plaintiff states a plausible claim that Defendants tortiously interfered with Plaintiff's business expectancy. Therefore, Count II survives.

**C. Count III**

In Count III, Plaintiff alleges that Defendants improperly converted precious metals, cash, and business records for their own benefit. Defendants argue that the Court should dismiss this Count because Plaintiff fails to identify with sufficient specificity the chattels that have, allegedly, been converted. Defendants maintain:

> Plaintiff does little more than recite the elements of a cause of action in conversion, and once again fails to adequately identify the subject matter of its claim. Plaintiff makes no statement identifying the allegedly converted precious metals, and gives nothing more than a categorical description of the business records at issue. Likewise, the failure to identify a specific account, fund, or the like makes Plaintiff's claim to cash improper.

(#12, p. 8.)

In order to establish a claim for conversion, a plaintiff must prove: (1) a wrongful assumption of control, dominion, or ownership by a person over another's personalty for one's own benefit and use, (2) plaintiff's right to the property, (3) plaintiff's right to immediate possession of the property, and (4) a demand of possession. *See Craig v. Citicorp Savings*, 578 N.E.2d 1331, 1335 (Ill. App. Ct. 1991); *Ralston v. Hobbs*, 306 S.W.3d 213, 221 (Tenn. App. Ct. 2009).

Plaintiff sufficiently identifies the allegedly converted business records containing gold party invitee information and precious metals purchased from customers with Plaintiff's funds. This satisfies Rule 8(a)(2), which states that "a claim for relief must contain a short and plain statement of the claim showing the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

As to the allegedly converted cash, Plaintiff and Defendants acknowledge that money may be the subject of conversion, as well. *See Bill Marek's The Competetive*

*Edge v. Mickelson Group, Inc.*, 806 N.E.2d 280, 285 (Ill. App. Ct. 2004) (citing *In re Thebus*, 483 N.E.2d 1258, 1260 (Ill. 1985)). "It is no longer necessary that money be specifically earmarked in order to sustain an action for conversion. An action for conversion may also be maintained where the converted funds are capable of being described, identified, or segregated in a specific manner." *Id.* Plaintiff identifies the funds as money from Plaintiff's bank account to which Temple and Rose had access for business purposes, but "skimmed" for themselves instead. Presumably, Plaintiff will identify a specific amount for its conversion claim after proceeding through discovery. At this early stage, however, Plaintiff states a plausible claim for conversion. Therefore, Count III survives.

### IV. Summary

For the reasons stated above, this Court recommends that Defendants' Motion to Dismiss Counts II and III of Plaintiff's Complaint Pursuant to Rule 12(b)(6) (**#11**) be **DENIED**.

However, the Court also notes that several deficiencies exist in Plaintiff's jurisdictional allegations: Plaintiff is an LLC but does not allege citizenship of its members, and Plaintiff alleges residency, not citizenship, of Temple and Rose. The Court recommends that Plaintiff be ordered to file an Amended Complaint to cure these deficiencies.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 12th day of March, 2013.

s/DAVID G. BERNTHAL<br>UNITED STATES MAGISTRATE JUDGE